**United States District Court**
**Northern District of Alabama**
**Western Division**

| | |
|---|---|
| **Primax Recoveries Incorporated,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-N-3579-S |
| **Richard E. Hayes, et al.,** | ] |
| Defendant(s). | ] |



**Memorandum of Opinion**

### I. Introduction

The court has for consideration the motion of plaintiff Primax Recoveries Incorporated ("Primax") for summary judgment, filed December 10, 2001. (Doc. # 13). Primax contends that the plaintiffs, Richard E. and Peggy M. Hayes, have breached certain contractual obligations made binding upon them by their participation in and use of an ERISA[1]-governed, self-funded Employee Welfare Benefit Plan administered by it. Primax likewise maintains that the terms of the plan are unambiguous, insofar as the obligations of the plaintiffs are concerned; thus warranting a finding in favor of it on plaintiffs' counterclaims as well. The issues have been fully briefed and are now ripe for decision. Having reviewed the record, the submissions of the parties, and the relevant legal standards, the court finds the plaintiff's motion for summary judgment is due to be **DENIED**.

---

[1] Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, *et seq.*



## II. Background

Richard Hayes is a participant of a healthcare benefit plan[2] sponsored by his employer, Lowe's Companies, Inc. ("Lowe's"). Mr. Hayes' wife Peggy Hayes is a named beneficiary of this plan. Primax, a Delaware corporation with its principal place of business in Schaumburg, Illinois, has been appointed and authorized by the plan to administer and prosecute all of the plan's rights and claims to reimbursement and subrogation, and is an assignee for purposes of collection. In delivering the plan and providing notice of its contents to the Hayes, Lowe's (the plan's administrator) satisfied all applicable legal requirements and provided the Hayes with insurance cards and booklets containing a summary plan description.

The provision of the plan pertinent to this memorandum of opinion is contained in the summary plan description and is entitled "Subrogation/Acts of Third Parties."

> SUBROGATION AND RIGHT OF REIMBURSEMENT (the assertion of recovery rights either to the third-party or to the employee):
> As a condition to receiving medical or disability benefits under this plan, covered person(s), including all dependents, agree to transfer to the plan their rights to recover damages in full for such benefits when the injury or illness occurs through the act of omission of another person. *Alternatively, if a covered person or a defendant receives any recovery, by way of judgment, settlement or otherwise, from another person or business entity, the covered person or dependent shall reimburse the plan in full, in first priority, for any medical or disability expenses paid by it (i.e., the plan shall be first reimbursed fully to the extend of any and all benefits paid by it from any monies received, with the balance, if any, retained by the plan member).* The obligation to reimburse the plan, in full, in first priority, exists regardless of whether the settlement or judgment specifically designates the recovery, or a portion thereof, as including medical or disability expenses. If a repayment agreement is required to be signed, this clause remains in effect regardless of whether it is actually signed. The plan's rights of full

---

[2] The plan qualifies as a self-funded Employee Welfare Benefit Plan within the meaning of ERISA.

> recovery, either by way of subrogation or right of reimbursement, may be from funds the covered person, dependant or guardian receives or is entitled to receive from the third party, any liability or other insurance covering the third party, the insured's own uninsured motorist insurance, underinsured motorist insurance, any medical payments, no-fault or school insurance coverages which are paid or payable. The plan may enforce its reimbursement or subrogation rights by requiring the employee, dependent or guardian to assert a claim to any of the foregoing coverages to which he/she may be entitled. The plan will not pay attorney fees or costs associated with the plan member's claim/lawsuit without express written authorization.

(Doc. # 16, Ex. 4, Excerpt from Summary Plan Description) (emphasis added).

On or about October 18, 1999, Ms. Hayes was injured in an automobile accident. The Hayes (or someone acting on their behalf) made a claim for medical insurance benefits under the plan. Some amount of benefits was paid to Ms. Hayes by the plan.[3] Ms. Hayes subsequently sought and received compensation from the automobile driver responsible for her injuries. In a settlement of her claim against him, Ms. Hayes received $50,000, the full limit of his liability insurance policy.

The impetus of the above-styled action arises from an alleged failure on the part of the Hayes' to compensate the plan for benefits paid to Ms. Hayes, consistent with the terms of the plan as set forth in the summary plan description. Primax argues that the "Defendants have breached their obligation to reimburse and repay the Plan for benefits that Peggy

---

[3] The parties do not agree as to the amount of benefits paid by the plan. Primax contends that the plan paid $44,616.06 on Ms. Hayes' behalf. The Hayes dispute this fact. In her affidavit, Peggy Hayes avers:

> I am not exactly sure how much I received in benefits as the result of the injuries I sustained on October 18, 1999. However I know it is not the amount claimed by the Plaintiff, because the list of medical expenses submitted by the Plaintiff sets forth some medical expenses which were either incurred prior to the date of my injuries or which are completely unrelated to the injuries I sustained on October 18, 1999.

Doc. # 17, Ex. 1, Aff. of Peggy Hayes.

Hayes received as and for the payment medical expenses incurred in the treatment of the injuries sustained in the accident in that they have failed to repay the Plan out of the settlement proceeds." (Doc. # 1). As relief it seeks *inter alia* reimbursement from the Hayes in "an amount equivalent to the unreimbursed benefits the Plan has paid . . . ." (*Id.*).

Although the Hayes proffer several theories in opposition, their prime defensive argument invokes the so-called "make whole doctrine." Styling their application of the doctrine as both an affirmative defense and a counterclaim, the Hayes contend that they are not obligated to reimburse the plan for those benefits paid to her "unless and until she is fully and completely compensated for her injuries and damages by the third party tort feasor." (Doc. # 7). They assert that since she has not been fully compensated for her injuries and damages, no obligation to reimburse the plan exists.[4]

### III.  Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

---

[4] The evidence proffered by the parties on this point – especially Primax – is an exercise in obfuscation. In an affidavit submitted in opposition to Primax's motion for summary judgment, Ms. Hayes claims that her medical bills from the accident were approximately $69,000. She further claims an additional loss of $2,782 in income. (Doc. # 17, Ex. 1, Aff. of Peggy Hayes). Primax denies the accuracy of this assertion, "to the extent that the Plaintiff admits that $44,616.06 was the amount paid by plaintiff in satisfaction of Mrs. Hayes medical bills." (Doc. # 20). Neither party has apparently seen fit to include documentation, receipts, or the like which might, more readily, solidify its position.

4

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences

5

in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150).

### IV.  Discussion

The force and effect of the plan language controls the outcome of this motion. If the Hayes have an obligation to reimburse the plan upon the receipt of funds from a third-party settlement – as Primax maintains they do – then the Hayes breached that obligation when they failed to so reimburse upon receiving recovery from the driver responsible for Ms. Hayes' injuries. If this obligation is restrained by the make whole doctrine, however, the Hayes have no obligation to reimburse if they were not, in fact, made whole through the benefits paid out by the plan. The court turns to this latter question.

The make whole doctrine is a default rule of contractual gap-filling imposed upon ERISA plans containing ambiguous language. *See Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997). The doctrine represents a "general equitable principle of insurance law . . .," adopted in this and other circuits as federal common law. *See Barnes v. Independent Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1394-95 (9th Cir. 1995). "[T]he make whole doctrine exists because parties to an insurance contract do not always explicitly address what happens when the insurer pays less than the insured's total loss, and the insured achieves a recovery from a third party." *Cagle*, 112 F.3d at 1522. Thus, in the instance of plan language ambiguous on the point, the make whole doctrine makes liable an "insured who has settled with a third-party tortfeasor . . . to the insurer-subrogee

6

only for the excess received over the total amount of his loss." *Id.* at 1520 (quotations omitted).

The make whole doctrine can be contractually eliminated from a plan. *See id.* at 1521. The means by which this is accomplished, however, are narrow. "An ERISA plan overrides the make whole doctrine only if it includes language 'specifically allowing the Plan the right of first reimbursement out of any recovery the participant was able to obtain even if the participant were not made whole.'" *Id.* at 1522. Primax argues that its plan has accomplished just this. Naturally, the Hayes disagree. The relevant plan language bears repeating:

> Alternatively, if a covered person or a defendant receives any recovery, by way of judgment, settlement or otherwise, from another person or business entity, the covered person or dependent shall reimburse the plan in full, in first priority, for any medical or disability expenses paid by it (i.e., the plan shall be first reimbursed fully to the extend of any and all benefits paid by it from any monies received, with the balance, if any, retained by the plan member). The obligation to reimburse the plan, in full, in first priority, exists regardless of whether the settlement or judgment specifically designates the recovery, or a portion thereof, as including medical or disability expenses.

According to Primax, this language "expressly states the Plan is due to be reimbursed first the amount actually paid for medical expenses." (Doc. # 16). According to the plaintiff, the plan language unambiguously, unequivocally, and unquestionably rejects the make whole doctrine.

The court does not agree. The language cited *supra* may well unambiguously establish a right of reimbursement in first priority in some circumstances, but the court does not at all interpret the language as setting forth an unequivocal right of reimbursement in first priority in the face of a less-than-completely compensated insured. Simply put, the

7

plain language of the plan nowhere addresses the question of less-than-complete compensation. It is, therefore, ambiguous on this point. The court appreciates the concerns of Primax that the *Cagle* Court could not have intended to impose a requirement of "certain magic words . . . to overcome the application of the made [sic] whole doctrine." (Doc. # 16). The *Cagle* Court did observe, however, that the "make whole doctrine exists because parties to an insurance contract do not always explicitly address what happens when the insurer pays less than the insured's total loss, and the insured achieves a recovery from a third party." *Cagle*, 112 F.3d at 1522. Not only would the court betray the function and purpose of the make whole doctrine by permitting a plan to reject it without making insureds aware of the fact that reimbursement is required even in the absence of full compensation, the court would also seemingly go against the rather explicit commands of the *Cagle* Court. Policy and law preclude this approach. *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998).

The adoption of the make whole doctrine as federal common law may in some situations frustrate legitimate ERISA objectives. *Cf. Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 280 (1st Cir. 2000). But the court does not see that here. In fact, and contrary to the arguments of Primax, the conclusion of this court in no way infuses the means by which parties may properly reject the make whole doctrine with a "liturgical . . . mantra which must be uttered verbatim."[5] (Doc. # 20). The court is simply requiring what

---

[5] The court, however, does wish to commend and thank plaintiff's counsel for his gratuitous contribution to the court's growing store of colorful and quotable phrases. He may rest assured that, in its gratitude, the court, on some appropriate and useful future occasion, will resurrect "liturgical mantra" and drop it, unsuspecting, into some profound opinion, hopefully spearing some worthy denizen of the bar and, of course, retaining credit for itself.

the *Cagle* Court required and what the plan in the instant case is without: a reference to the fact that a right of reimbursement in first priority exists *even when* the beneficiary has not been made whole by the plan. This can easily be accomplished without having to inject the words "make whole" into the language of the plan. *See, e.g., Healthcare Co. v. Clemmons*, 162 F. Supp. 2d 1374, 1379-80 (N.D. Ga. 2001) (recognizing a rejection of the make whole doctrine where the plan contained the following language: "The plan's rights to recovery and reimbursement are a first priority claim and will be paid before any other claim for damages, even if the total amount of the recovery is not sufficient to reimburse or compensate you in entirety for the damages.").

The conclusion of this court that the make whole doctrine applies to the ERISA plan at issue in this action disposes of the question of whether Primax is entitled to summary judgment. Clearly it is not. Whether the Hayes are entitled to judgment is another matter entirely. As noted *supra*, the make whole doctrine applies when plan language is ambiguous on the point of reimbursement in the face of an insured not fully compensated by the insurer. A necessary concomitant to this rule is the presence of an insured not fully compensated. In light of the submissions of the parties, the court does not find the evidence submitted convincing upon the point of whether Ms. Hayes was or was not fully compensated. The only evidence before the court on this issue the affidavit of Ms. Hayes, circuitously rebutted by Primax. Judgment on this alone would be imprudent. The motion of Primax for summary judgment is therefore due to be and is hereby **DENIED**.

9

## V. Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 31st of January, 2002.

Edwin Nelson
United States District Judge

10